## Case No. 3,931.

### DIXON v. MOYER.

[4 Wash. C. C. 68;[1] 1 Robb. Pat. Cas. 324.]

Circuit Court, D. Pennsylvania. April Term, 1821.

PATENTS—VALIDITY—WHAT SPECIFICATIONS MUST SHOW—INFRINGEMENT — DIFFERENCES IN FORM AND PROPORTION —ACTIONS — NOTICE OF PRIOR USE.

1. Upon the plea of not guilty the plaintiff must prove, not merely that the defendant had made a saddle described in his patent, but that it substantially resembled the invention of the plaintiff; and if the difference be in form and proportions only, they are the same.

[Cited in Whitney v. Emmett, Case No. 17,585.]

2. A patent cannot be said to be obtained in fraud of the right of another, who had given up his rights to the plaintiff, by expressly or tacitly permitting him to obtain a patent for it.

[Cited in Whitney v. Emmett, Case No. 17,585.]

3. It is contended that the plaintiff must date his right from the time of his application for the patent; the distinction is this, he must in all cases prove that the infringement of his right took place after his application or the date of his patent. But if the defendant attempts to avoid the patent by showing that the plaintiff was not the original discoverer, the patent will be considered as relating back to the original discovery.

[Cited in Hogg v. Emerson, 6 How. (47 U. S.) 437.]

4. The specification must point out the new improvement of the patentee, so as to show in what the improvement consists; and it will not be sufficient that the same is shown on the trial by exhibiting the invention.

5. Upon a notice of the invention confined to a prior use in the United States, the court will not permit evidence to be given of a prior use in England.

[Cited in Brooks v. Jenkins, Case No. 1,953.]

This is an action [at law] for violation of a patent right, for a new and useful improvement in manufacturing men's and women's saddles, without saddle trees [granted to P. Dixon, July 16, 1819]. The schedule states, that "the pad is first cut out, and made in any shape thought proper. The part of a pad usually covered with a saddle tree, is then covered with a piece of thick leather. A piece of web is then sewn across the pad, over the thick leather, sufficiently wide for the girth straps to be attached to it. A cantle of very strong leather is then put on, and secured to the pad. A plate of iron is then put across the head of the pad, to which the stirrup bars are riveted. This plate goes into case loops. made on each side of the pad; and the extremities of the plate are tied in the loops to prevent them from working. A seat cloth is then put on, in the same manner as in the common saddle, in which the saddletree is used. The seat is then stuffed

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

and set. The leather for the seat is then drawn over it, and the skirts fitted, as in a common saddle. The seat is then taken off and seamed to the skirts; the flaps are cut out, and instead of being nailed, are sewed to the skirts, a little below the welt of the seat. The seat is then drawn on, and instead of being nailed, as in the common saddle, it is sewed. The saddle, thus made, resembles in appearance the common saddle in which the saddletree is used. It is capable of enduring as much hard usage as the common saddle, and is much easier to the rider, and safer to the horse." The patent bears date the 16th of July, 1819; but it was proved that the plaintiff had a saddle of the kind above described, made in his shop about the latter end of May preceding. It was also proved that the defendant made and sold saddles without trees, and with skirts and flaps, after the date of the plaintiff's patent, and before the commencement of the suit. In support of the notice given to the plaintiff, "that the defendant would give in evidence under the general issue that the saddle for which the plaintiff had obtained a patent, was not originally discovered by him, but had been in use in various places within the United States, and that the plaintiff had surreptitiously patented the discovery of another person;" witnesses were examined, who proved, that a saddle, substantially like the plaintiff's, was made and sold by a Mr. Andrews, on or just before the 15th of July 1819; and that another was made by Hudson, and sold on the 28th of May: and it was further proved, that another saddle had been made in the month of April preceding, differing from the plaintiff's only in the circumstance, that the pad and skirts of that saddle were fastened together. It further appeared, that one Wimbly, a journeyman in the plaintiff's shop, suggested the improvement for which the patent was obtained; but that he made no application himself for a patent; on the contrary, he asked the plaintiff, if he (the plaintiff) could obtain a patent for the discovery, and that he took charge of the shop whilst the plaintiff went to Washington to obtain the patent. Many witnesses were examined upon the subjects of identity on the plaintiff's and defendant's saddles, and originality of discovery. Upon the first point, the witnesses pointed out some differences between the two saddles, in the manner of making them, and in their external appearances, but both of them were made with skirts and flaps, and without trees. The skirts in the defendant's saddle were so fastened as to answer as a substitute for the draw-down in the plaintiff's, for confining the seat. Upon the second point it was proved, that the pad saddles without saddle trees or skirts and flaps, had been in use long before the 16th of July, 1819, and that the common tree saddles with skirts and flaps, were as old as the memory of the witness could reach.

Phillips, for the defendant. contended: 1. That the defendant was not guilty of having invaded the plaintiff's patent, inasmuch as the saddles which he had made, differed in many respects from the one described in the specification, and shown in court. 2. That the plaintiff's discovery is nothing more than a combination of old materials, without any thing new; or, if there be any thing new, the specification does not distinguish the old from the new, or state in what the improvement consists. 1 Mass. 182; 3 Wheat. [16 U. S.] Append. 21. 3. That the plaintiff was not the first inventor of this saddle, but the same was in use prior to the date of the patent, which he insisted was the only date to be regarded; or if the plaintiff has a right to go back to the time of discovery, which was the latter end of May, still the same kind of saddle had been previously made and used. 3 Inst. 184; Wood v. Zimmer, 1 Holt, N. P. 58. 4. That the discovery if it be one, was made by Wimbly: who not having assigned his right to the plaintiff, his obtaining a patent was surreptitious, in relation to Wimbly; and for this reason also the patent is void.

C. J. Ingersoll, for plaintiff. combated the points made by the defendant's counsel; and in reference to the second, insisted, that the specification sufficiently describes the improvement, and distinguishes the old from the new materials; but that even if it does not, the defendant cannot avail himself of defects in the specification under the general issue, and without also showing that they were introduced for the purpose of deceiving the public; and finally, that artists only are competent to say whether the specification is sufficiently explicit, to enable one skilled in the art to make such a saddle as is there described.

WASHINGTON, Circuit Justice. Upon the plea of not guilty, it is incumbent on the plaintiff to prove, not merely that the defendant had made. used, or sold a saddle; but that it substantially resembled the one for which the plaintiff has obtained his patent. And if the difference between them be only in form, or proportions, they are the same in legal contemplation; since to permit the defendant to shelter himself under a mere formal difference, would be to sanction a fraudulent evasion of the plaintiff's right, and to render the patent law a dead letter. The second section of the patent law, which declares that simply changing the form or proportions of any machine, or composition of matter, shall not be deemed a discovery, affords a sensible and a just rule, equally applicable to an art or manufacture, and has always been so considered and treated. In actions of this kind, persons acquainted with the particular art to which the controversy relates are usually examined for the purpose of pointing out and explaining to the jury the points of resemblance, or of difference, between the thing pat-

ented, and that which is the alleged cause of the controversy; and the opinions of such witnesses, in relation to the materiality of apparent differences, are always entitled to great respect. But after all, the jury must judge for themselves, as well upon the information so given to them, as upon their own view, where the articles, or models of them, are brought into court. The witnesses, who testified in this case, did not entirely agree in opinion as to the nature of the difference between the plaintiff's and the defendant's saddles. Most of them however stated, that it consisted in the workmanship bestowed upon the saddles, and upon their external appearance. You have had an opportunity of examining them, and must decide whether they are, or are not substantially the same. If they are, the plaintiff has made out his case on the general issue; since it is not denied that the defendant had made and used saddles similar to those produced in court, subsequent to the 16th of July, 1819, and before the institution of this action. Another objection to the plaintiff's right of recovery arises out of the special matter given in evidence, of which notice was given by the defendant to the plaintiff. It is, that the plaintiff surreptitiously obtained this patent for a discovery of one Wimbly, who worked as a journeyman in his shop. If the jury are satisfied that the discovery was in reality made by Wimbly, they must be also satisfied that the patent was obtained in fraud of any right which such discovery bestowed upon Wimbly. For if, upon the evidence, you should be of opinion, that Wimbly gave up his right of discovery to the plaintiff, by expressly or impliedly permitting him to encounter the trouble and expense of obtaining a patent, it cannot be affirmed that the plaintiff obtained the patent surreptitiously, or in fraud of Wimbly's discovery.

The next inquiry is, whether the saddle for which the plaintiff has obtained a patent, was in use prior to his alleged discovery. The patent bears date the 16th of July, 1819; and Taylor. one of the witnesses. has deposed that the first saddle made in the plaintiff's shop, upon which the patent was obtained, was about the latter end of May preceding. Hudson swears that he made a saddle like the plaintiff's, and sold it on the 28th of May, 1819; and Andrews swears, that he saw a saddle substantially the same, except that the skirts and pad were fastened together, in April of the same year. It is contended by the defendant's counsel, that the plaintiff's right is to date from the time when he applied for the patent. which for any thing that appears to the contrary, should be considered as having happened on the same day on which the patent issued. If so. then Hudson's saddle was made and sold before the plaintiff's title accrued. But the court cannot yield its assent to the doctrine of the defendant's counsel. It is incumbent on the plaintiff to show, that the infringement took

DIXON (Case No. 3,932) [7 Fed. Cas. page 760]

place after the time of his application, or the date of his patent. But, if the defendant attempts to avoid the patent by showing that the patentee was not the original discoverer of the thing patented, the patent will be considered as relating back to the original discovery. The notice authorized to be given by the sixth section of the law is, that the plaintiff was not the original discoverer, but that the thing patented had been in use, &c., anterior to the supposed discovery of the patentee. Taking it for granted that this patent is to date from the latter end of May, there would be some difficulty in deciding the question of priority between the plaintiff and Hudson, whose saddle was made also the latter end of May. Did the cause turn on this point, the jury should require the defendant to clear up their doubts, by satisfying them that the right of priority was due to Hudson; because upon that fact he grounds the defence, and in his notice he undertakes to establish it. But at all events, if the evidence of Andrews be believed by the jury, and if they are also of opinion that the connecting of the skirts to the pad of the saddle, spoken of by this witness, is a mere difference in form from the patented saddle, the plaintiff cannot be considered as an original discoverer. This, if so found by the jury, is fatal to the plaintiff's right.

The last objection, or the second made by the defendant, is, we think, fully made out, and is not less fatal to the plaintiff's recovery. This is founded on the imperfect description of the thing patented, given in the specification. It professes to be an improvement in the manufacturing of saddles without trees. The materials and the manner of making the saddles described are all old, or if there be any thing new in the combination, or in the application of the old to the new, they are not distinguished; nor does the specification describe, or attempt to describe in what the improvement consists. It is quite impossible to say, whether it consists in substituting some other material for the tree, so as to constitute an improvement of the old saddle tree; or in adding skirts and flaps to the pad saddle, which was in use long before the date of the plaintiff's discovery, and was made without trees; or whether it consists in all, or any of the other described operations in the making of saddles. If in all, then the patent is broader than the discovery, since it is clear that the materials, as well as the process in the manufacture, described in the specification, are old. If the improvement consists in any one or more of the particulars set forth in the specification, it ought to have been so stated, in order that other persons might have known how to avoid any infringement of the plaintiff's right; and that the public might have the benefit of the discovery, by referring to the specification itself, after the expiration of the plaintiff's monopoly. It is not enough for the plaintiff's counsel or the witnesses to point out at the trial, or even for the jury to perceive by examination of the thing patented, and comparing it with others before in use, what it is that constitutes the improvement. This would afford no advantage to third persons, and least of all would it afford consolation to the defendant, who, if he has offended at all, did it innocently, and through ignorance, and can make atonement in no other way, but by submitting to the penalty which the law imposes upon him, and the troubles and expense incident to litigation. Third persons wishing to avoid these consequences, can safely depend upon no other information than what the records of the secretary of state's office may afford. No description of the discovery secured by a patent will fulfil the demands of justice and of the law, but such as is of record there, and of which all the world may have the benefit. It was insisted by the plaintiff's counsel, that this specification is perfectly intelligible to an artist, who could experience no difficulty in making such a saddle as is there described; and that if it be not so, still the defendant cannot avail himself of the defect, unless he had stated it in his notice, and also proved at the trial an intention in the plaintiff to deceive the public. But these observations are all wide of the objection, which is not that the specification does not contain the whole truth relative to the discovery, or that it contains more than is necessary. It is admitted that the specification does not offend in either of these particulars. But the objection is, that throughout the whole of a very intelligible description of the mode of making the saddle, the patentee has not distinguished what was new, from what was old and before in use, nor pointed out in what particulars his improvement consisted. Upon this objection then, the verdict ought to be for the defendant, whatever the jury may think on the other points.[2]

Plaintiff suffered a nonsuit.

[2] The court refused to allow evidence to be given, to prove that saddles like the plaintiff's had been in use in England many years ago, the notice being special and confined to the alleged use within the United States.
[1] [Reported by Hon. William Cranch, Chief Judge.]